**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.C.-1, K.C.-2, and K.C.-3**

**No. 25-165** (Ohio County CC-35-2024-JA-23, CC-35-2024-JA-24, and CC-35-2024-JA-25)

**MEMORANDUM DECISION**

Petitioner Mother R.C.[1] appeals the Circuit Court of Ohio County's February 21, 2025, order terminating her parental rights to K.C.-1, K.C.-2, and K.C.-3, arguing that the circuit court erred in denying her an improvement period and terminating her parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In late 2023, the DHS implemented safety services in the home after both K.C.-3 and the petitioner tested positive for methamphetamine upon the child's birth. As a result, the petitioner attended outpatient substance abuse treatment and participated in drug screening. However, the DHS filed a petition in March 2024 after receiving another referral about injuries to K.C.-3. Initially, the parents claimed the child was injured when the petitioner, who was holding the child, tripped over a rug, hit the wall, and fell to the ground. However, in the father's absence, the petitioner disclosed that the father struck her during an argument when she was holding K.C.-3 and must have hit the child as well. The petitioner confirmed that both K.C.-1 and K.C.-2 were in the home when this occurred. According to the DHS, the petitioner had a bruise on her head where she claimed she was struck. Despite admitting to this incident, the petitioner denied that she had a history of domestic violence with the father. Upon medical examination, it was confirmed that the child suffered from non-accidental head trauma, including three separate skull fractures and extensive brain injuries. During the DHS's investigation, the father initially denied striking the child but later claimed he must have accidentally hit the child when the petitioner stood up in front of him. According to the DHS, the parents' explanations were inconsistent with the child's injuries. Ultimately, the DHS alleged, in pertinent part, that the parents exposed the children to domestic violence which led to the non-accidental injuries of K.C.-3, the petitioner had a history of substance

---

[1] The petitioner appears by counsel Michael A. Kuhn. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Tyler L. Cline appears as the guardian ad litem for K.C.-1 and K.C.-2. Counsel Michael B. Baum appears as the guardian ad litem for K.C.-3.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the children have the same initials, we use numbers to differentiate them.

1

abuse, and the petitioner failed to protect the children from domestic violence by remaining in a relationship with the father.

At the adjudicatory hearing in August 2024, the DHS presented K.C.-3's medical records and expert testimony from a pediatrician who explained the nature of K.C.-3's non-accidental injuries. The petitioner testified that she was struck only once by the father and that this blow must have also hit the child. However, the pediatrician testified that "a single blow would not have caused all of the child's injuries." The petitioner could not provide an explanation as to the full extent of the child's injuries as she could not remember being struck more than once due to the force of the father's hit. Additionally, the circuit court found that the father's attempt to explain the child's injuries was "not credible" and also "inconsistent with the expert medical testimony." As such, the circuit court found that K.C.-3's injuries were non-accidental and that both parents failed to explain what had caused these injuries. Additionally, the court found that the petitioner failed to protect the children from domestic violence as she remained in a relationship with the father. Lastly, the circuit court found that there were issues of substance abuse which also gave rise to concerns about the children's safety. Therefore, the circuit court proceeded to adjudicate the petitioner as an abusing and/or neglectful parent of all three children based on her failure to protect the children from domestic violence and substance abuse. The petitioner then filed a motion for a post-adjudicatory improvement period.

At the dispositional hearing in December 2024, the DHS presented the petitioner's drug screens which, according to the parties, contained approximately six positive screens for alcohol and multiple missed screens.[3] The DHS also presented the petitioner's psychological evaluation, which stated that the petitioner had a "very poor" prognosis as to her ability to parent. The psychological evaluator also testified, as an expert, and stated that the children would not be safe if returned to the petitioner's care. The petitioner restated her claim that K.C.-3 was only injured by a single blow, which the circuit court again found did not explain the full extent of the child's injuries. The circuit court stated that "[b]oth [parents] have lied about the incident, telling various stories and misleading medical providers, authorities, CPS and/or this Court, raising concerns that they are covering for each other." Additionally, the circuit court noted that although the petitioner had obtained a domestic violence protective order against the father, the order was terminated after she "reunited with him for a time during this case" despite K.C.-3 being injured because of their unhealthy relationship. Therefore, the circuit court denied the petitioner's motion for a post-adjudicatory improvement period. The circuit court proceeded to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. Thus, the circuit court terminated the petitioner's parental rights to all three children.[4] It is from the circuit court's dispositional order that the petitioner appeals.

---

[3] The petitioner does not dispute that she was ordered to remain drug and alcohol free during the underlying proceedings.

[4] The father's parental rights were also terminated. The permanency plan for each child is adoption in their respective placements.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, the petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B) a parent *may* be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." Here, the petitioner tested positive for alcohol multiple times and missed several screens, demonstrating the petitioner's noncompliance and failure to participate. Furthermore, during the proceedings, the petitioner reunited with the father despite the couple's extensive domestic violence history which led to K.C.-3's severe physical injuries. The circuit court found it concerning that the petitioner offered various explanations as to what happened to the child, all of which were unbelievable and showed that the petitioner was dishonest about the cause of the child's injuries, leading the court to find that the petitioner continued to cover for the father's actions. We decline to disturb such findings on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Therefore, we conclude that the circuit court did not err in denying the petitioner's motion for an improvement period and proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").[5]

Lastly, the petitioner argues that the circuit court erred in terminating her parental rights as this was not the least restrictive alternative. We again disagree. We have repeatedly held that, pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights without the use of a less restrictive alternative "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." Based on the evidence outlined above, the record reflects that the petitioner failed to address her issues of substance abuse or end her abusive relationship with the father. As such, the circuit court had ample evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future. Additionally, the petitioner's psychological evaluation resulted in a poor prognosis for

---

[5] In support of this assignment of error, the petitioner also argues that at disposition, an expert witness improperly opined that the petitioner may have been under the influence when the domestic violence altercation that led to K.C.-3's injuries occurred. However, the petitioner cites to no portion of the record in which she objected to this testimony. As such, she has waived this issue. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

proper parenting and expert testimony confirmed that the children's safety would be threatened if returned to the petitioner's care. Therefore, there was sufficient evidence to find that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, the circuit court did not err in terminating the petitioner's parental rights. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)))).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 21, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4